IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| D. LAMAR DELOACH, WILLIAM G. HYMAN, HYMAN FARMS, INC., GUY W. HALE, JAMES R. SMITH, HOUSTON T. EVERETT, D. KEITH PARRISH, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:00CV01235 |
| PHILIP MORRIS COMPANIES, INCORPORATED, PHILIP MORRIS USA INC., PHILIP MORRIS INTERNATIONAL, INC., R.J.R. NABISCO HOLDINGS CORP., R.J. REYNOLDS TOBACCO HOLDINGS, INC., R.J. REYNOLDS TOBACCO COMPANY, B.A.T. INDUSTRIES, P.L.C., BRITISH AMERICAN TOBACCO COMPANY, INC., BATUS HOLDINGS INCORPORATED, BROWN & WILLIAMSON TOBACCO CORPORATION, LORILLARD TOBACCO COMPANY, LOEWS CORPORATION, UNIVERSAL LEAF TOBACCO CO., J.P. TAYLOR CO., INC., SOUTHWESTERN TOBACCO CO., INC., DIMON INC., STANDARD COMMERCIAL CORP., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

OSTEEN, District Judge

    Attorney Alexander J. Pires, Jr. and the law firm of Conlon, Frantz, Phelan & Pires, L.L.P. ("Class Co-Counsel") bring a

Motion for Permanent Injunction seeking to prevent Jimmy K. Lee, Sr., William Denny Lee, Dale R. Lucas, and Sammy Tant (the "State Court Plaintiffs") from continuing a lawsuit they filed in the Superior Court of Johnston County, North Carolina.  D. Lamar Deloach, Guy W. Hale, William G. Hyman, D. Keith Parrish, and James R. Smith ("Class Representatives") also filed a Motion for Permanent Injunction seeking the same relief.[1]  Movants seek to halt a state court lawsuit styled <u>Jimmy K. Lee, Sr., William Denny Lee, Dale R. Lucas, and Sammy Tant, Plaintiffs, v. Alexander J. Pires, Jr.; Conlon, Frantz, Phelan & Pires, LLP; D. Lamar Deloach; Guy W. Hale; William Hyman; D. Keith Parrish; and James R. Smith, Defendants</u>, No. 04-CVS-3623, (the "State Court Action").  For the reasons set forth below, the motions will be DENIED.

**I.   BACKGROUND**

In the State Court Action, State Court Plaintiffs bring

---

[1] D. Keith Parrish is the only Class Representative to file a brief regarding their motion.  In his brief, Parrish states that State Court Plaintiffs voluntarily dismissed without prejudice all claims against the remaining Class Representatives, leaving him as the only grower defendant in the action pending in the Superior Court.  State Court Plaintiffs remain free to reinstate their claims against the other Class Representatives. All Class Representatives, however, move for a permanent injunction, and they rely on Parrish's brief in support of that motion.  Because the other Class Representatives may be reinstated as defendants at any time, the court will, for the purposes of this Memorandum Opinion and Order, assume that all of State Court Plaintiffs' claims against Parrish are currently asserted against all Class Representatives in the pending state court action.

2

claims arising out of an agreement dated February 16, 2000, with Class Co-Counsel and Class Representatives regarding who would serve as the lead plaintiffs and/or class representatives in the instant class action (the "Agreement"). State Court Plaintiffs were originally named as lead plaintiffs/class representatives, but agreed to drop out pursuant to the Agreement. They allege that under the terms of the Agreement, they were given rights to share in any incentive award given by this court to the remaining lead plaintiffs/class representatives. The State Court Action also includes claims against Class Co-Counsel arising out of their representation of State Court Plaintiffs during the negotiation and execution of the Agreement. In the State Court Action, State Court Plaintiffs allege breach of contract, constructive fraud, and fraud. Additionally, they allege fraudulent practice and malpractice against Class Co-Counsel.

**II. DISCUSSION**

In seeking a permanent injunction, Class Co-Counsel argue that the State Court Action is a collateral attack on this court's approval of the settlements in the class action. In approving the settlements, the court found Class Co-Counsel's representation of the class to be adequate. This finding, Class Co-Counsel argue, resolves factual issues relating to their representation, and relitigation of those issues is barred under the doctrines of res judicata and/or collateral estoppel.

3

Because res judicata or collateral estoppel apply, the court has authority to stay proceedings in the State Court Action under the "relitigation exception" to the Anti-Injunction Act.  See 28 U.S.C. § 2283.  Class Representatives agree with and rely on the arguments raised by Class Co-Counsel.  Additionally, they argue that an effort to enforce an agreement to share in the incentive awards would encroach on this court's exclusive jurisdiction to decide the amount of any award to individual class members and would violate public policy against the payment of "bounties" in federal class actions.

In response, State Court Plaintiffs argue the relitigation exception to the Anti-Injunction Act does not apply here because the issues in the State Court Action were not decided by the court's orders approving the class action settlements.  They argue these orders do not mention the Agreement and that breach of the Agreement did not occur until after the settlements were approved.  In response to the additional argument made by Class Representatives, State Court Plaintiffs contend the Agreement does not guarantee them anything "extra" and so cannot be considered a "bounty."

The Anti-Injunction Act forbids a federal court from staying proceedings in state courts, except in three situations.  See 28 U.S.C. § 2283.  The third situation, known as the "relitigation exception," allows a federal court to stay state court

proceedings when necessary "to protect or effectuate its judgments." Id. The exception is grounded in the concepts of issue preclusion (collateral estoppel) and res judicata. Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146, 108 S. Ct. 1684, 1690 (1988). "The exception rests on the idea that federal courts should not be forced to rely on state court application of res judicata or estoppel principles to protect federal court judgments and decrees." Thomas v. Powell, 247 F.3d 260, 262 (D.C. Cir. 2001). In determining whether this exception will apply, the federal court must "determine whether, in order for the plaintiff to succeed in [the state court], that court will have to rule upon an issue or claim already decided by the federal district court." Id. at 263. "[T]his prerequisite is strict and narrow," requiring a careful consideration of the scope of the federal court ruling. Chick Kam Choo, 486 U.S. at 148, 108 S. Ct. at 1690.

Here, Class Co-Counsel argue that if the State Court Action proceeds, the North Carolina court will be asked to rule on the adequacy of Class Co-Counsel's representation. This is incorrect. While State Court Plaintiffs are members of the class, neither the subject matter nor the clients in the two representations at issue here are the same. According to State Court Plaintiffs' complaint in the state court, their claims against Class Co-Counsel arise solely from Class Co-Counsel's

5

representation of State Court Plaintiffs in the negotiation and execution of the Agreement. This representation is not the same as the representation of the class on its antitrust claims in the class action litigation. This court has made no ruling or decision regarding the representation of State Court Plaintiffs in regard to the Agreement and has not been asked to review that issue. Any ruling on these claims by the North Carolina court would not interfere or overlap with a ruling in the class action litigation. Thus, the court has no grounds to enjoin the State Court Action with regard to claims arising out of any alleged legal representation provided by Class Co-Counsel as to the Agreement.

Next, Class Representatives argue the Agreement, if enforced, would encroach on this court's jurisdiction to decide the amount of any incentive award payable to each named plaintiff. The Agreement is signed as a private contract between State Court Plaintiffs, Class Representatives, and Class Co-Counsel, and the claims of breach of contract, fraud, and constructive fraud allege the <u>personal</u> liability of Class Co-Counsel and Class Representatives. If the North Carolina courts choose to enforce the Agreement, recovery could only be had from the parties to the Agreement as individuals. This would not affect any judgment or order of this court in the wholly distinct

6

class action.[2]  Therefore, this Agreement does not interfere with the court's jurisdiction on the matter of incentive awards, and there is no ground to enjoin the claims in the State Court Action that relate to enforcement of the Agreement.

Finally, Class Representatives argue that enforcing the Agreement would violate public policy against the payment of bounties in class action litigation.  Class Representatives cite In re Gould Securities for support of this public policy.  See 727 F. Supp. 1201, 1209 (N.D. Ill. 1989).[3]  Gould, however, denied incentive awards to class representatives.  Id.  Class Representatives have requested incentive awards in this class action litigation, and the Gould court's reasoning would undercut their own request.  Moreover, the opinion appears to represent a minority view.  In fact, many courts around the country have allowed incentive awards to named plaintiffs or class representatives.  See, e.g., In re U.S. Bancorp Litig., 291 F.3d 1035, 1038 (8th Cir. 2002) (approving incentive awards of $2,000

---

[2] While this court alone must decide the amount of any incentive award to Class Representatives, what those individuals choose to do with any proceeds they might receive is none of the court's affair.

[3] Class Representatives also cite Burke v. Ruttenberg, 102 F. Supp. 2d 1280, 1320 (N.D. Ala. 2000), for the proposition that statutory provisions on securities class actions discourage the use of class representatives who have received "bounties."  This reference, however, refers to litigants who have received bounty payments from attorneys or private individuals in exchange for bringing an action, and does not appear to refer to the appropriateness of an incentive award allowed by a court.

7

to each of five representative plaintiffs); <u>In re Lease Oil Antitrust Litig. (No. II)</u>, 186 F.R.D. 403, 449 (S.D. Tex. 1999) (allowing awards of between $750 and $10,000 to class representatives); <u>Bogosian v. Gulf Oil Corp.</u>, 621 F. Supp. 27, 32 (D.C. Pa. 1985) (allowing award of $20,000 to each of two named class representatives). One district court has gone so far as to say that incentive awards are "routinely approve[d]." <u>Cullen v. Whitman Med. Corp.</u>, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (internal quotations omitted). The purpose of such awards is to encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook. <u>Varcallo v. Massachusetts Mut. Life Ins. Co.</u>, 226 F.R.D. 207, 257 (D.N.J. 2005). The court disagrees with Class Representatives that any public policy against the payment of incentive awards or "bounties" exists. <u>See generally</u>, Clinton A. Krislov, <u>Scrutiny of the Bounty: Incentive Awards for Plaintiffs in Class Litigation</u>, 78 Ill. B. J. 286 (1990).

Therefore, the motions will be denied.

### III. CONCLUSION

For the reasons set forth herein,

IT IS HEREBY ORDERED that the Motion for Permanent Injunction [456] is DENIED.

8

IT IS FURTHER ORDERED that the Motion for Permanent Injunction [458] is DENIED.

This the 29th day of June 2005.

_____
United States District Judge