IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| D. LAMAR DELOACH, WILLIAM G. HYMAN, HYMAN FARMS, INC., GUY W. HALE, JAMES R. SMITH, HOUSTON T. EVERETT, D. KEITH PARRISH, <br><br>      Plaintiffs,<br><br>      v.<br><br>PHILIP MORRIS COMPANIES, INCORPORATED, PHILIP MORRIS USA INC., PHILIP MORRIS INTERNATIONAL, INC., R.J.R. NABISCO HOLDINGS CORP., R.J. REYNOLDS TOBACCO HOLDINGS, INC., R.J. REYNOLDS TOBACCO COMPANY, B.A.T. INDUSTRIES, P.L.C., BRITISH AMERICAN TOBACCO COMPANY, INC., BATUS HOLDINGS INCORPORATED, BROWN & WILLIAMSON TOBACCO CORPORATION, LORILLARD TOBACCO COMPANY, LOEWS CORPORATION, UNIVERSAL LEAF TOBACCO CO., J.P. TAYLOR CO., INC., SOUTHWESTERN TOBACCO CO., INC., DIMON INC., STANDARD COMMERCIAL CORP.,<br><br>      Defendants. | 1:00CV01235 |

MEMORANDUM OPINION AND ORDER

OSTEEN, District Judge

    Pending before the court is Plaintiffs and the Class' Petition to Conduct Limited and Expedited Discovery. For the reasons set forth below, the petition will be DENIED.

## I. BACKGROUND

On June 16, 2005, this court entered a Memorandum Opinion and Order (the "June 16th Order") regarding the enforcement of the Fourth Circuit Court of Appeals' ruling in <u>Deloach v. Lorillard Tobacco Company</u>, 391 F.3d 551 (4th Cir. 2004), which held in part that § 7.0 (the "Most Favored Nations Clause" or "MFN") of the May 2003 settlement agreement between the plaintiffs' class and all defendants except R.J. Reynolds Tobacco Company ("First Settlement Agreement") was triggered. In the June 16th Order, the court held that because the MFN was triggered and no exception to the MFN was applicable, the domestic leaf purchase commitments in the First Settlement Agreement are subject to reduction as outlined in § 7.4 of that agreement. The June 16th Order described the formula set out in § 7.4 and noted that Plaintiffs had argued further discovery was necessary to properly apply the reduction formula. The court declined to determine the amount of any reduction on its own and allowed the parties to request additional discovery or be heard on the issue. Plaintiffs and the Class have petitioned for limited and expedited discovery, and Defendants have opposed that request.

## II. DISCUSSION

In requesting discovery, Plaintiffs and the Class seek to determine "how the leaf commitment by R.J. Reynolds Tobacco

2

Company ('RJR'), which is not reduced downward based on future cigarette production, compares to the leaf commitments in the First Settlement [Agreement], which are subject to such downward adjustments." (Pls. & Class' Pet. Conduct Ltd. & Expedited Disc. at 1.) In Plaintiffs' brief regarding the June 16th Order, they note that the MFN is premised on the notion that "certain terms of this [First Settlement] Agreement shall be no less favorable to Philip Morris USA, Lorillard and Brown & Williamson[1] than those terms agreed to in future settlements with [RJR]." (Pls.' Opp'n Philip Morris USA Inc. & Lorillard Tobacco Co.'s Mot. Enforce 4th Cir. Mandate & Declare Amt. Leaf Commitment Reductions Pursuant MFN at 20 (quoting Settlement Agreement of May 16, 2003 [hereinafter, "First Settlement Agreement"] § 7.1).) The leaf purchase commitments were one of the terms that were to be "no less favorable." Because the First Settlement Agreement allows for some downward adjustment for Philip Morris and Lorillard based on future cigarette production levels, while the settlement with RJR allows for no such adjustments, Plaintiffs and the Class essentially argue that the court must be able to compare the leaf purchase commitments and make adjustments to the MFN to conform it to its basic principles.

---

[1] In 2004, Brown & Williamson Tobacco Corporation merged with R.J. Reynolds Tobacco Company. Thus, Philip Morris and Lorillard argue this motion as the two remaining cigarette manufacturer defendants in the First Settlement Agreement.

In response, Defendants argue, first, that the reductions in the leaf purchase commitments occasioned by the cash component of the RJR settlement are not in dispute and would result in a 50.53% reduction in their leaf commitments. Second, they argue that the amount of reduction triggered by the leaf commitment component of the settlement with RJR cannot be reasonably disputed because it is clearly and unambiguously described in the First Settlement Agreement. A mechanical application of the formula in § 7.4 yields an additional reduction of 18.10%, and no discovery is needed to arrive at this result.

Defendants have the better of this argument. Section 7.4 of the First Settlement Agreement sets out a formula for determining the amount of reduction resulting from the later settlement with RJR. It is a percentage reduction that is "the sum of (a) the percentage by which the actual green leaf Volume Commitment of [RJR] is below its relative volume obligation and (b) the percentage by which the Cash and Cash Equivalent paid by [RJR] is less than its relative cash obligation." (First Settlement Agreement § 7.4.) All of the terms used in the formula are defined in the First Settlement Agreement or clearly discernible in the later settlement agreement with RJR.

The terms of § 7.4(a) regarding the leaf purchase component reductions are clearly set out. First, the "actual green leaf Volume Commitment of [RJR]" is 35 million pounds, a fixed yearly

4

amount.  (Settlement Agreement of Apr. 22, 2004 [hereinafter, "RJR Settlement Agreement"] § 4.1.)  Second, RJR's "relative volume obligation" is defined as "its <u>relative leaf purchase share</u> multiplied by" 330 million pounds.[2]  (First Settlement Agreement § 7.2(E.)(emphasis added).)  Each manufacturer's "relative leaf purchase share" was listed in Schedule 2 of the First Settlement Agreement, with RJR's share set at 12.95%.  (First Settlement Agreement § 7.2(D.), Sched. 2.)  Thus, RJR's relative volume obligation is 12.95% of 330 million pounds, or 42,735,000 pounds.  To calculate "the percentage by which the actual green leaf Volume Commitment of [RJR] is below its relative volume obligation," the difference between 42,735,000 and 35,000,000 (or 7,735,000) is divided by 42,735,000.  This yields a reduction of 18.10% based on the leaf purchase component.

The terms regarding the cash component reductions are also unambiguous.  First, the "Cash and Cash Equivalent paid by [RJR]" is defined as "any consideration paid to Plaintiffs and/or the

---

[2] The number of pounds is defined in the agreement as the lowest of three possible numbers:  (1) 330 million pounds; (2) Philip Morris' obligation for crop year 2003 if the calendar year 2002 is used as the base year; or (3) Philip Morris' obligation for crop year 2003 if a certain contingency occurred.  (First Settlement Agreement § 7.2(E.).)  Defendants assert, and Plaintiffs and the class do not dispute, that the contingency described in the third option did not occur.  Philip Morris' obligation for crop year 2003 using 2002 as the base year was 330 million pounds.

5

Class in the form of cash . . ., including attorneys' fees awarded by the Court." (First Settlement Agreement § 7.2(B.).) The cash amount paid by RJR was $33 million, inclusive of attorneys' fees. (RJR Settlement Agreement § 2.1.) Second, RJR's "relative cash obligation" is defined as "its <u>relative cigarette sales market share</u> multiplied by the <u>Cash Settlement Component</u>." (First Settlement Agreement § 7.2(F.) (emphasis added).) The "relative cigarette sales market shares" are set out in Schedule 1, and for RJR this number is 24.23%. (First Settlement Agreement § 7.2(C.), Sched. 1.) The "Cash Settlement Component" is defined as "the sum of $200 million plus the attorneys' fees awarded by the Court pursuant to Section 2.3."[3] (First Settlement Agreement § 7.2(A.).) Pursuant to § 2.3, the court awarded $70,821,329.48 in attorneys' fees.[4] <u>Deloach v. Philip Morris Cos.</u>, No. 1:00CV01235, 2003 WL 23094907 at *11 (M.D.N.C. Dec. 19, 2003) (order determining the appropriate amount of attorneys' fees, costs, and expenses). Thus, RJR's relative cash obligation is 24.23% of $270,821,329.48, or $65,620,008.13. To calculate "the percentage by which the Cash

---

[3] The amount was to be reduced if certain contingencies occurred, but those events did not materialize.

[4] In Defendants' opposition brief, they added the amount of fees, expenses, and costs awarded by the court, for a total of $75,290,336.98. The First Settlement Agreement, however, states that only attorneys' fees were to be added to the $200 million amount. (<u>See</u> First Settlement Agreement § 7.2(A.).)

6

and Cash Equivalent paid by [RJR] is less than its relative cash obligation," the difference between $65,620,008.13 and $33 million (or $32,620,008.13) is divided by $65,620,008.13. This yields a reduction of 49.71% based on the cash component.

The total reduction pursuant to § 7.4 is the sum of 18.10% and 49.71%, or a total of 67.81%. Therefore, Defendants who are parties to the First Settlement Agreement are entitled to a reduction in their green leaf Volume Commitment for any remaining whole years in the amount of 67.81%. There is no need for additional discovery to properly apply the formula in § 7.4, and Plaintiffs' and the Class' petition will be denied.

### III. CONCLUSION

For the reasons set forth herein,

IT IS HEREBY ORDERED that Plaintiffs and the Class' Petition to Conduct Limited and Expedited Discovery [468] is DENIED.

IT IS FURTHER ORDERED that Philip Morris USA Inc. and Lorillard Tobacco Company's Motion for Expedited Order [472] is GRANTED. The court herein determines that under § 7.4 of the Settlement Agreement of May 16, 2003, Defendants are entitled to a reduction in their green leaf Volume Commitment for any remaining whole years in the amount of 67.81%.

This the 4th day of August 2005.

_____
United States District Judge